UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                -against-

LUZ ELVIRA CARDONA,
     also known as "Lucy",

                Defendant.

------------------------------------------------------------------------ x

**MEMORANDUM & ORDER**

21-CR-00622 (LDH)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

        Defendant Luz Elvira Cardona was charged with Counts Three, Four, and Six of an indictment dated December 10, 2021.  Count Three charged Cardona with sex trafficking a minor, Jane Doe #2, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), and (b)(2).  Count Four charged Cardona with transporting Jane Doe #2 in interstate and foreign commerce, with the intent that Jane Doe #2 engage in prostitution, in violation of 18 U.S.C. § 2423(a).  Count Six charged Cardona with participating in a Travel Act conspiracy to use one or more facilities in interstate and foreign commerce with intent to carry on an unlawful business enterprise involving prostitution, in violation of the laws of the State of New York and 18 U.S.C. §§ 371 and 1952(a)(3).  The indictment also included criminal forfeiture allegations.  On December 14, 2021, Cardona pleaded not guilty to all counts.

        The Court held a jury trial commencing on September 26, 2023.  At the close of the Government's case, Defendant Cardona moved for a judgment of acquittal.  The motion was denied.  On October 19, 2023, the jury returned a guilty verdict against Cardona as to Counts Three, Four, and Six of the Indictment.  Defendant Cardona moves for a judgment of acquittal,

1

pursuant to Federal Rule of Criminal Procedure 29(b), or, alternatively, a new trial pursuant to Rule 33(a). (*See* Def. Cardona's Mot. J. Acquittal ("Def.'s Mot."), ECF No. 267.)

## BACKGROUND[1]

### I. Jane Doe #2's Testimony

On October 19, 2023, a jury rendered a verdict of guilty on all charges as to Cardona and her husband, Jose Facundo Zarate Morales; mother-in-law, Blanca Hernandez Morales; and father-in-law, Roberto Cesar Cid Dominguez, for engaging in a sex trafficking operation where they coerced women and minor girls into prostitution. (Jury Verdict, ECF No. 254.) At trial, the jury heard testimony from two of the minor victims, Jane Doe #1 (Trial Transcript "Trial Tr." 679-847) and Jane Doe #2 (Trial Tr. 1137-1333).

According to trial testimony, Jane Doe #2 grew up in Mexico with her aunt, Cardona. (Trial Tr. 1146-47.) In 2007, Cardona, residing in Queens at the time, arranged for Jane Doe #2, who was fifteen years old at the time, to travel from Mexico to Los Angeles and eventually to New York. (Trial Tr. 1146-47, 1160-62, 1284:12-15.) Cardona paid the costs for Jane Doe #2's trip to Los Angeles, arranged drivers to bring her from Los Angeles to New York, and brought her to live with Cardona and Cardona's family in New York—including Defendants Zarate Morales, Hernandez Morales, and Cid Dominguez. (Trial Tr. 1160-63.) Jane Doe #2 arrived in New York City with the expectation that she would work as a cleaner. (Trial Tr. 1160.) Cardona and her co-Defendants discussed the fact that, as a fifteen-year-old minor, Jane Doe #2 was unable to get a job. (Trial Tr. 1169.) A few days after her arrival, Jane Doe #2 was made to work for the family by handing out cards for their prostitution business. (Trial Tr. 1164-65.) When Jane Doe #2 expressed that she no longer wanted to hand out cards, Cardona informed

---

[1] The facts are taken from documents and testimonial evidence adduced at trial. Citations to "Trial Tr." refer to the transcript of trial.

Jane Doe #2 that she had to engage in prostitution to pay off a $10,000 debt that she owed Cardona for bringing her to the United States. (Trial Tr. 1166-67.)

Jane Doe #2 told Cardona that she was a virgin. (Trial Tr. 1167.) Within weeks of Jane Doe #2's arrival in New York City, Cardona and her co-Defendants began calling clients seeking the highest bidder to purchase Jane Doe #2's virginity. (Trial Tr. 1167-68.) Before Jane Doe #2 was brought to her first client, Cardona explained to Jane Doe #2 what to do on the first night. (Trial Tr. 1170.) Zarate Morales drove Jane Doe #2 to her first client and to several other clients on her first night of work. (Trial Tr. 1170-72.) From then forward, Jane Doe #2 was made to work seven days a week, servicing twenty to twenty-five clients per night, and then was forced to give all her proceeds to Cardona as payment for the purported debt that she owed. (Trial Tr. 1173-74, 1187, 1191.) Cardona provided Jane Doe #2 with pills to keep her from menstruating and condoms to use with clients. (Trial Tr. 1187-89.) Cardona would also apply make up on Jane Doe #2 to make her appear older. (Trial Tr. 1189.)

In addition to the purported outstanding debt, Cardona further coerced Jane Doe #2 into engaging in prostitution by threatening to call immigration authorities if she failed to work. (Trial Tr. 1195.) When Jane Doe #2 continued to express that she did not want to engage in prostitution, Jane Doe #2 was sent to live with a man named Omar, who was expected to use physical force to gain her compliance. (Trial Tr. 1200.) Initially, Omar gave the proceeds Jane Doe #2 earned to Cardona. (Trial Tr. 1201.) Later, Omar kept the proceeds for himself. (Trial Tr. 1201.) While living with Omar, Jane Doe #2 was arrested for prostitution. (Trial Tr. 1203-04.) Upon her arrest, Jane Doe #2 provided the authorities with a fake name and age, which she had been taught to do by Cardona. (Trial Tr. 1203-04.) Jane Doe #2 eventually gave the

authorities her true name and age and was placed in a foster home. (Trial Tr. 1204.) Months later, Jane Doe #2 ran away from the foster home and returned to Mexico. (Trial Tr. 1204.)

Over the course of the trial, other witnesses, including the other minor victim, Jane Doe #1, offered testimony consistent with the testimony of Jane Doe #2. For example, witnesses testified about how Defendants promoted their prostitution business using cards like those described by Jane Doe #2. (*See* Trial Tr. 493-94, 702-04, 870-871, 1346-1347, 1470-71.) Witnesses also testified about how Defendants routinely coerced victims into prostitution to pay off debts purportedly owed to the family for bringing these victims to the United States. (*See* Trial Tr. 493-94, 702-04, 870-871, 1346-1347, 1470-71.) Additionally, Witnesses testified about the structure and daily operation of the Defendants' prostitution business, the auctioning of Jane Doe #2's virginity, and the facts related to Jane Doe #2's living and working arrangements with the family. (*See* Trial Tr. 494, 506, 694, 696, 866-69, 910-11, 1188, 1190, 1192, 1352, 1356-57, 1361, 1477-78.)

## II. Jane Doe #2's In-Court Photographic Identification of Cardona

After Jane Doe #2 testified about her relationship with Cardona, the Government asked Jane Doe #2 to identify Cardona in the courtroom. (Trial Tr. 1147.) When Jane Doe #2 replied that she could not "make her out," the Government sought to show Jane Doe #2 a photograph of Cardona for identification. (Trial Tr. 1147.) Defendants objected to the photographic identification on the grounds that: (1) use of the photograph for identification was improper given that the photograph had been taken two years prior; and Jane Doe #2 had not seen Cardona in several years, and (2) a photographic identification would be unduly suggestive because Jane Doe #2 had just failed to identify Cardona in the courtroom. (Trial Tr. 1148-53.) The Court overruled Defendants' objection to the use of the photograph based on the time the photograph

4

was taken and sustained Defendants' objection to the photographic identification on the grounds that it would be unduly suggestive immediately following Jane Doe #2's failed in-court identification. (Trial Tr. 1152-53.) The Government asked whether the Court would permit it to attempt a second in-court identification later in Jane Doe #2's examination. (Trial Tr. 1153.) The Court reserved its determination and directed the Government to renew its request at the time that it sought to show Jane Doe #2 the photograph. (Trial Tr. 1153.) Jane Doe #2 then testified at length about how she made her way to the United States from Mexico City and was coerced into engaging in prostitution for the Defendants. (Trial Tr. 1154-74.)

During a recess, the Government renewed its request to proceed with the photographic identification of Cardona.[2] Cardona, again, objected. (Trial Tr. 1178-83.) The Court overruled Cardona's objection, finding that its prior concern with respect to the temporal proximity of Jane Doe #2's failed in-court identification had been resolved by the passage of time and the series of intervening unrelated questions. (Trial Tr. 1183.) When direct examination resumed, the Government asked Jane Doe #2 to identify Cardona from a photograph taken after Cardona's 2021 arrest. (Trial Tr. 1185-86.) Jane Doe #2 identified the individual in the photograph as Cardona. (Trial Tr. 1185-86.) At the request of Defendants, the Court later included in its jury charge a detailed instruction emphasizing the Government's burden and credibility considerations with respect to identification testimony. (Trial Tr. 1916-17.)

---

[2] The Government requested to either show Jane Doe #2 a series of photographs with multiple individuals or the single photograph of Cardona for Jane Doe #2's identification. (Trial Tr. 1178-80.) The Court ruled that a photograph array was not necessary, and the Government was permitted to ask Jane Doe #2 to identify the individual in the photograph of Cardona. (Trial Tr. 1180-83.)

**STANDARD OF REVIEW**

I.      **Rule 29 Motion**

Under Rule 29 of the Federal Rules of Criminal Procedure, "a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citing Fed. R. Crim. P. 29(a), (c)). A defendant challenging the sufficiency of evidence "bears a heavy burden," *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017), and a Rule 29 motion may be granted "only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt,'" *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (internal citation omitted). In considering such a motion, "[n]ot only must the evidence be viewed in the light most favorable to the Government and all permissible inferences drawn in the Government's favor, . . . but the jury verdict must be upheld if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson*, 335 F.3d at 180 (internal citation omitted).

II.     **Rule 33 Motion**

Under Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, . . . it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

Specifically, "[i]n evaluating a Rule 33 motion, the court must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation,' keeping in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (internal citations omitted). While a court "'may weigh the evidence and credibility of witnesses,' it must take care not to usurp the role of the jury," which is tasked with resolving conflicting evidence and assessing witness credibility. *United States v. Landesman*, 17 F.4th 298, 330 (2d Cir. 2021) (internal citation omitted). Thus, "a district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020). Only in "exceptional circumstances"—where, for example, "the evidence was patently incredible or defie[s] physical realities" or "the government's case depends upon strained inferences drawn from uncorroborated testimony"— should a court grant a new trial. *Landesman*, 17 F.4th at 331.

## DISCUSSION

**I.    Rule 29 Motion for Judgment of Acquittal**

The jury convicted Cardona of three counts, which required the Government to prove beyond a reasonable doubt that Cardona was knowingly and intentionally involved in a sex trafficking conspiracy and was responsible for the transportation and trafficking of minor victim, Jane Doe #2.[3]  Cardona asks this Court to enter a judgment of acquittal on Counts Four, Five,

---

[3] The Court instructed the jury that, with respect to Count Three, sex trafficking of a minor, the Government must prove beyond a reasonable doubt that: (1) that the defendant knowingly transported, recruited, enticed, harbored, provided or obtained a person by any means; or that the person knowingly benefitted, financially or by receiving something of value, from participating in a venture that recruited, enticed, transported, harbored, provided or obtained a person; (2) that the defendant knew that force, fraud or coercion would be used with respect to such

7

and Eight of the indictment on the grounds that Jane Doe #2's testimony was not sufficiently credible to serve as a basis for Cardona's conviction. (*See* Def.'s Mot. at 15-17)

It is well-settled that the uncorroborated testimony of one witness is sufficient to sustain a conviction as long as that testimony is "not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Riggi*, 541 F.3d 94, 110 (2d Cir. 2008) (quoting *United States v. Parker,* 903 F.2d 91, 97 (2d Cir. 1990)). Indeed, "[a]ny lack of corroboration goes merely to the weight of the evidence, not to its sufficiency." *Id*. As the Government notes in its opposition, Cardona does not argue that Jane Doe #2's testimony fails to establish the elements necessary to sustain a conviction under Counts Four, Five, and Eight, but "only that this testimony should not be believed." (Gov't's Mem. L. Opp'n Def's Mot. ("Gov't's Opp'n") at 12, ECF No. 275; *see* Def.'s Mot. at 15 ("[Jane Doe #2] was an unreliable witness and therein lies the basis of the insufficiency.").) But, as a general matter, "[i]t is the province of the jury and not of the court to determine" a witness's credibility. *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011). The proper place for a party to challenge a witness's credibility "is in cross–examination and in subsequent argument to the jury, not in a request for

---

person or that such person was under the age of eighteen years; (3) that the defendant knew that such person would be engaged in a commercial sex act; and (4) that the defendant's conduct was in or affecting interstate or foreign commerce. (*See* Trial Tr. 1939-55.)

With respect to Count Four, to prove that a defendant is guilty of transporting a minor for the purpose of prostitution, the Government must prove beyond a reasonable doubt that: (1) the defendant knowingly transported an individual in interstate or foreign commerce; (2) the defendant transported the individual with the intent that he or she would engage in prostitution; and (3) at the time, the individual was less than eighteen years old. (*See* Trial Tr. 1955-56.)

With respect to Count Six, to prove that defendant is guilty of violating the Travel Act, the Government must prove beyond a reasonable doubt that: (1) the defendant caused someone else to travel interstate (or used or caused someone else to use an interstate facility); (2) this use of an interstate facility was done with the intent to promote, manage, establish, or carry on an unlawful activity; and (3) after this use of an interstate facility, the defendant performed or attempted to perform an act in furtherance of this same unlawful activity. (*See* Trial Tr. 1961-69.)

post–trial relief from a verdict." *United States v. Robinson*, 749 F. App'x 35, 37 (2d Cir. 2018) (internal citation and quotations omitted). Accordingly, a court must not "second-guess a jury's apparent decision to credit a witness's testimony except in extreme cases where the testimony was 'incredible as a matter of law,' meaning it was 'incredible on its face' or it 'def[ied] physical realities.'" *Robinson*, 749 F. App'x at 37 (quoting *United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012)). Such is not the case here.

In the instant case, Cardona points the Court to instances where Jane Doe #2 could not recall certain details and recounted "strange stories." (Def.'s Mot. at 17.) Specifically, Cardona highlights that: Jane Doe #2 did not recall the name of the family she worked for in Mexico City; the date on which she arrived in New York City; when she stopped living with Cardona; the details of her arrest, including what she told the police in May 2008; or the year that she left the foster home. (*Id.* at 16.) Likewise, Cardona directs the Court to the fact that Jane Doe #2 gave a false name and age to the police when she was arrested, and that she never sought help from law enforcement or family members. (*Id.* at 16-17.) Cardona further challenges, as "suspect" and "fantastical," Jane Doe #2's testimony about Cardona providing her with pills to stop menstruation, being threatened by a client with a knife, and walking from Tijuana to Los Angeles. (*Id.*) Ultimately, according to Cardona, Jane Doe #2's testimony was unreliable and therefore insufficient to sustain her conviction. (*See id.*) The Court disagrees.

Jane Doe #2 testified that Cardona arranged and financed her travel to New York City from Mexico under the false pretense that she would work as a cleaner, sold her into prostitution knowing that she was fifteen years old, manipulated her into engaging in prostitution to pay off a purported debt, and threatened to call immigration authorities if she refused. (Trial Tr. 1146-47, 1160-62, 1173-74, 1187, 1191.) Nothing about this testimony is facially incoherent, patently

9

incredible, or defies physical realities. Notwithstanding Cardona's protestations, the same is true of Jane Doe #2's stories of receiving pills from Cardona to stop menstruation, being attacked by a client with a knife, and crossing into Los Angeles through the beaches of Tijuana. (Def.'s Mot. at 16; Trial Tr. 1810.)

Notably, although not necessary to sustain Cardona's convictions, material aspects of Jane Doe #2's testimony were corroborated by the testimony of other witnesses. (*See* Gov't's Opp'n at 13-14.) For example, Jane Doe #3 testified about being present during a conversation between the Defendants and other members of their organization about the auction for Jane Doe #2's virginity. (*See* Trial Tr. 1356-58.) Cooperating witness, Antonio Vargas, who worked as a driver for the organization, also testified that Jane Doe #2 lived with Cardona and her family and worked with the Defendants. (Trial Tr. 910-11.) And, Jane Doe #1 testified about the business cards Defendants used to promote their business and offered details about the daily work that they engaged in, which aligned with the work described by Jane Doe #2. (Trial Tr. 693-705.) Furthermore, victims Jane Doe #1 and Jane Doe #3 similarly testified about being forced to engage in prostitution to pay back their aunt, Defendant Hernandez Morales, for bringing them to the United States. (Trial Tr. 703-04, 1354-56.) Though not specifically about Cardona, this testimony is consistent with Jane Doe #2's testimony.

\* \* \*

Ultimately, none of the challenges made by Cardona meet the heavy burden that was required by a Rule 29 Motion for Judgment of Acquittal. *See O'Connor*, 650 F.3d at 855. The testimony of Jane Doe #2, along with the corroborating testimony of other witnesses, were sufficient for a reasonable juror to find that the elements of Counts Four, Five, and Eight were

established beyond a reasonable doubt and, thus, sustain Cardona's conviction under each count.[4]

## II.     Rule 33 Motion to Set Aside the Jury's Verdict and Order a New Trial

A photographic identification procedure violates due process if, under the totality of the circumstances, the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Jarrett v. Headley*, 802 F.2d 34, 40-41 (2d Cir. 1986); *see also Smart v. LaManna*, No. 17-CV-5140, 2023 WL 2895997, at *5 (E.D.N.Y. Apr. 11, 2023).  In determining whether an identification procedure gave rise to the likelihood of irreparable misidentification, the Court evaluates "the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

---

[4] In her reply, Cardona attempts to raise a new argument, in support of her motion for judgment of acquittal, that her due process rights were violated when the Court refused to dismiss a juror who had been sleeping during Jane Doe #2's testimony. (Def.'s Reply at 5, ECF No. 276.)  Because Cardona first raises this argument in her reply brief, the argument is waived. *See Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007), *aff'd,* 288 F. App'x 721 (2d Cir. 2008) (holding that arguments raised for the first time in a reply brief are waived) (collecting cases). Nonetheless, the Court notes that the Second Circuit has routinely upheld a trial court's decision not to dismiss a sleeping juror.  *See, e.g. United States v. Steele*, 390 F. App'x 6, 14 (2d Cir. 2010) (upholding a trial court's determination not to remove a sleeping juror where the trial judge declined to discharge a juror for sleeping "unless they were sleeping through the entire evidence"); *United States v. Hui*, 64 F. App'x 264, 266 (2d Cir. 2003) (holding that the trial court acted within its "broad discretion" when deciding not to remove a sleeping juror).  The Court noted on the record that it observed a juror who appeared to be asleep, but that this juror was not asleep "throughout the entirety, or even the lion's share of an examination." (Trial Tr. 1176-77.)  And, upon the jury's return from recess following this incident, the Court reminded jury of the importance of paying attention to testimony and emphasized that jurors cannot fall asleep.  (Trial Tr. 1185.)  The law is clear that the Court acted well within its discretion not to dismiss the juror.  *See Steele*, 390 F. App'x at 14.  Accordingly, Cardona's argument that her due process rights were violated by the Court's refused to dismiss a sleeping juror do not support a judgment of acquittal.

At trial, the Government asked Jane Doe #2 whether she could identify Cardona in the courtroom, to which Jane Doe #2 responded that she could not "make her out." (Trial Tr. 1147.) The Government then immediately sought to have Jane Doe #2 identify Cardona using a photograph of Cardona from the day of her arrest. (Trial Tr. 1147.) The Court sustained Defendants' objection on the grounds that a photographic identification would be impermissibly suggestive, given its temporal proximity to Jane Doe #2's failed identification. (Trial Tr. 1148-53.) However, the Court overruled Defendants' objection to the use of the photograph as improper given the length of time between the last time Jane Doe #2 saw Cardona and the date that the photograph was taken. (Trial Tr. 1152-53.) After additional testimony and a jury recess, the Government sought again to show Jane Doe #2 a photograph of Cardona. (Trial Tr. 1179.) Given the length of time that passed from the initial failed identification, the Court permitted the photographic identification. (Trial Tr. 1179-83, 1186.) Jane Doe #2 identified Cardona in the photograph shown to her. (Trial Tr. 1186.)

Cardona argues that the Court should set aside the jury's verdict and order a new trial because Jane Doe #2's in-court photographic identification of Cardona was impermissibly suggestive and therefore violative of Cardona's Fifth Amendment due process rights. (Def.'s Mot. at 18-19.) According to Cardona, Jane Doe #2 was unable to make an in-court identification because of the passage of time. (Def.'s Mot. at 18-19.) And, the only reason Jane Doe #2 was able to subsequently make a photographic identification is because that identification was impermissibly suggestive. (*Id.* at 18.) The Court disagrees.

As the Government noted, after Jane Doe #2's initial, failed in-court identification, she provided "significant additional testimony" about other individuals prior to making an in-court identification of Cardona (Gov't's Opp'n at 17-18 (citing Trial Tr. 1155, 1159, 1160-62, 1163,

12

1164, 1167-74).) There is no reason to believe that, after substantial additional testimony, Jane Doe #2's in-court identification of Cardona was the result of anything but her own recognition of Cardona and thus permissible. *See United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994) ("[Defendant] was unable to show that the ability of [the witnesses] to identify him at trial was the product of the pre-trial photograph arrays they had been shown or of the circumstances at trial . . . . [The witnesses'] testimony was thus sufficient to establish that their identifications had an origin independent of their viewing [Defendant] in the courtroom and hence was sufficient to meet the threshold of reliability needed to permit [their] in-court identifications . . . ."). Nor does Cardona point to any such reason. Accordingly, Cardona's argument that the photographic identification was impermissibly suggestive fails.

Additionally, prior to trial, Jane Doe #2 made multiple photographic identifications of Cardona. (Gov't's Opp'n at 14-15.) And, "[w]hen a witness has made a pretrial identification, . . . [t]he first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). Here, Cardona has not challenged the pre-trial identification. Therefore, the inquiry ends here. *See id.* At most, "questions as to the reliability of a proposed in-court identification affect only the identification's weight, not admissibility." *Matthews*, 20 F.3d at 547.

Further, the parties do not dispute that Cardona is Jane Doe #2's aunt and that Jane Doe #2 knew Cardona well. (Gov't's Opp'n at 20, *see also* Trial Tr. 466.) Jane Doe #2 testified that she and Cardona grew up together in Mexico and that she lived with Cardona in New York for several months. (Trial Tr. 1146-47.) Additionally, during Jane Doe #2's testimony, she

13

provided substantial information about Cardona:  For example, Jane Doe #2 testified to Cardona's whereabouts during the relevant time period, (Trial Tr. 1159-62), the year in which Cardona was pregnant, (Trial Tr. 1162-63), and the names of the individuals with whom Cardona lived while in New York, (Trial Tr. 1163); and identified Cardona by her full name, (Trial Tr. 1154), Cardona's domestic partner as Jose Facundo Zarate, (Trial Tr. 1154), Cardona's mother-in-law as Bianca Morales, (Trial Tr. 1163), and Cardona's father-in-law as Cesar, (Trial Tr. 1163).  The "longstanding and familial relationship" between Jane Doe #2 and Cardona, alone, establishes an independent basis for Jane Doe #2's in-court identification of Cardona.  *See United States v. Marsh*, 644 F. App'x 5, 7 (2d Cir. 2016) ("Because [the witness] had a prior longstanding and familial relationship with [the defendant], the district court did not err in concluding that there was an independent basis for the identification testimony").  That is, because of the familial relationship between Jane Doe #2 and Cardona, there was no "substantial likelihood of irreparable misidentification." *Marsh*, 644 F. App'x at 7.  "A lengthy interval between the event and the identification is not determinative if it is outweighed by other indicia of reliability." *Maldonado-Rivera*, 922 F.2d at 974 (2d Cir. 1990).  The fifteen years that passed since Jane Doe #2 saw Cardona is thus outweighed by the reliability of Jane Doe #2's identification of Cardona based on their longstanding familial relationship.  Accordingly, Cardona's argument that the photographic identification was impermissibly suggestive, too, fails.

      Moreover, the Government highlights multiple reasons that may have led to Jane Doe #2's failed in-court identification of Cardona, including the fifteen-year gap between the last time Jane Doe #2 had seen Cardona and Jane Doe #2's failed identification, and the fact that Jane Doe #2 was testifying in front of strangers, and argues that the jury could infer that these reasons explained Jane Doe #2's failed identification.  (Gov't's Opp'n at 20.)  However, regardless of the

14

reason for Jane Doe #2's failed in-court identification of Cardona, an identification is not impermissibly suggestive because "any question as to the reliability of the witness' identifications goes to the weight of the evidence, not its admissibility." *Maldonado-Rivera*, 922 F.2d at 973. Therefore, it was up to the jury to consider the reliability of Jane Doe #2's in-court photographic identification, alongside the Court's additional jury instructions, following her inability to identify Cardona in the courtroom. *See Kennaugh v. Miller*, 289 F.3d 36, 43 (2d Cir. 2002) (holding that "the reliability of eyewitness identification testimony is usually an issue for jury determination," unless there is a substantial likelihood of irreparable misidentification). For these reasons, Jane Doe #2's identification of Cardona did not violate Cardona's right to due process.

## CONCLUSION

For the foregoing reasons, Defendant Cardona's motion for a judgment of acquittal, or in the alternative, a new trial is DENIED.

                                                    SO ORDERED.

Dated: Brooklyn, New York             /s/ LDH
       August 28, 2025                     LASHANN DEARCY HALL
                                           United States District Judge